Emma Nichols
vs.
New England Telephone and } No. 93184
Telegraph Company

April 23, 1935.

FROST, J. Heard on defendant's motion for new trial after verdict for plaintiff in the sum of $5500.00.

This is an action to recover damages for personal injuries alleged to have been received as a result of a fall on the northerly sidewalk of Plainfield Street, a few feet westerly of the corner of Killingly and Plainfield Streets in the City of Providence.

On the afternoon of January 9, 1934, Miss Nichols was walking in the roadway of Plainfield Street. As she neared the sidewalk in front of 615 Plainfield Street, she placed her left foot upon the curbstone and her right foot upon the dirt portion of the sidewalk. Her right foot went down as the surface gave way and she fell. She sustained a fracture of the right patella, which has to a certain degree incapacitated her up to the present time.

The plaintiff maintains that the depression in the sidewalk into which her right foot went resulted from the improper filling of a hole from which a telephone pole had been removed.

The defendant denies any responsibility for the defect in the sidewalk, if such there was, and says specifically that while a telephone pole near the location of the accident was replaced in 1932 by another pole, the new pole was set in the hole made by the removal of the old pole.

Miss Nichols testified that the sidewalk was of dirt; that the surface appeared to be all right before she placed her foot upon it; that the hole was about the size of her foot; that she went in nearly to her knee.

Mrs. Alice Hillier, a good-appearing woman of 70 or more years, testified that at the time of the accident she was living at 615 Plainfield Street and on that afternoon was sitting at the window sewing, on the Killingly side of the house; that Miss Nichols after the accident was brought into Mrs. Lippold's tenement in the same house; that there was a little dirt on her leg but that it did not extend to her knee; that she went out and looked at the sidewalk; that the hole was about two feet from a telephone pole; that the dirt had given way to the pole; that she remembered when the pole was erected in February or March, 1932;

that it was erected with another pole standing there; that the old pole was removed three or four weeks after the new pole was set; that the butt of the old pole was given her for kindling in the month of May of that year, 1932; that the poles seemed to be attached to each other.

Thomas Ciccone, a young man who runs a filling station at or about 624 Plainfield Street, testified that his house was diagonally distant about 75 to 100 feet from the place of the accident; that he recalled a change of poles at or near the corner of Plainfield and Killingly Streets; that he was raking in his yard when the change took place; that two poles were wired together; that the new pole was toward the city and close by or 15 inches from the old pole; that a few days later the old pole was taken down; that the stump was taken out, the hole filled in and the earth tamped down with shovels; that the two poles were in the ground at the same time.

Quite in contrast with the evidence relating to the pole given by witnesses called by the plaintiff is the testimony introduced by the defendant.

Roderick McDonald, a mature person who has been a line construction foreman for many years, testified that pole 91, the pole in question, was cut off with an axe; that the portion of the pole above the ground was guyed temporarily; that a shallow excavation was made on the easterly side of the butt and then the machine pulled out the stump; that a new pole was set in the hole left by the butt of the old pole which was pulled out; that earth was put back with shovels and tamped with tampers weighing 17 lbs. each; that the old pole with its bottom resting on the ground was then wired to the new pole; that this was done since there were some wires on the old pole which did not belong to the defendant company; that this work was done on May 24, 1932.

John P. Harding testified that the butt was pulled out, the hole was cleaned out and the new pole placed in it; that the old pole was then lashed to the new one.

Joseph A. Hart and Ludovicko testified to the same effect.

It would seem that the men who set the pole should know how it was done but against that it is urged that at times holes are dug in new locations and poles set therein and that this pole 91 may have been one of such. One can not deny such a possibility. Reliance is placed upon Mrs. Hillier's testimony but it would appear that her memory is not infallible since she said that she thought the new pole was erected in February or March, 1932, and plaintiff's exhibit 7 shows that application for replacement of poles was not made to the Public Service Engineer until April 26, 1932. It would, therefore, seem that there is no reason to dispute the date, May 24th, as the time when the pole was set, and Mrs. Hillier admits that the butt was placed in her yard the latter part of May, which in itself tends to confirm the testimony as to the date May 24.

Mrs. Hillier had no particular interest in the setting of the pole and certainly Ciccone, a hundred feet away, did not have reason to differentiate it from the installation of any other pole.

The defendant also introduced evidence tending to show that the distance between the new pole and other poles was the same as the distance between the old pole and these same other poles. There was also testimony that the marks on the wires made by attachment wires show the new pole to be in substantially the same position as the old pole.

In this case the plaintiff saw fit not to sue the municipality for a defect in the highway but to cue the company that she considered to be the real wrongdoer. That being the case, since the work alleged to have been negligently done was done, if at all, by this Company a year and eight months

prior to the appearance of the defect in the sidewalk, the plaintiff should be held to very clear proof of such negligence. The Court thinks that such clear and convincing proof has not been shown and that the testimony as a whole relating to the installation of the new pole number 91 does not outweigh the evidence of the defendant that the pole was properly set and in a particular place.

But, however that may be, the Court does not rest its ultimate decision of the present motion wholly upon its view that the weight of the evidence is to the effect that a new pole rather than dirt filling occupied the old hole. There is evidence clearly suggesting that the alleged defect in the sidewalk was due to improper filling in of earth at the time of the resetting of the curbing on Plainfield Street. Ciccone testified that the curbing was reset and that he thought it was in 1931. Mrs. Hillier thought the curbing was reset about a year before the accident. She also said that the "hole" extended west along the curbing; that it was parallel with and very near the curbing; that it was not more than a foot from the curbstone at any point.

Mrs. Congdon, called by the plaintiff, testified that the sidewalk was wet and muddy; that it was all soft; that the hole was near the curb.

George H. Walker, also called by the plaintiff, testified that the hole was perhaps one to two inches from the curb.

Leslie J. Lippold, a high school student, testified in behalf of the plaintiff and said that the hole was almost near the curbstone; that it was about two feet from the telephone pole; that he filled the hole with ashes. He also said that the depression shown in defendant's exhibit C was the hole that he filled. If he be right in that, his testimony, with defandant's exhibit C, would seem to completely exonerate this defendant.

Assuming, then, that the testimony of Mrs. Hillier relative to the pole is correct, the testimony of the same witness is that the curbing was reset but a year before the accident. Two potential causes of a defect in the sidewalk are therefore shown. The time of the accident as related to the cause, the size of the "hole" and its location point as clearly, if not more so, to negligence in resetting the curbstone as to lack of care in the resetting of a telephone pole.

It is elementary that a jury may not speculate and base its verdict upon mere conjecture. There was no attempt in this case to eliminate the resetting of the curbing as a possible cause of the defect claimed in the sidewalk.

Upon the careful consideration of all the evidence, the Court is of the opinion that the verdict is against the weight of the evidence and against the law as given to the jury, and defendant's motion is therefore hereby granted.

For plaintiff: Peter L. Cannon, Rabinowitz.

For defendant: Swan, Keeney & Smith.